WINIFRED WAY, Appellee, v. S. L. COLLINS OIL COMPANY, Appellant.

**EXPLOSIVES:** Tests for Illuminating Oil—Standard. Secs. 2505 and 2508, Code Supp., 1913, construed, and held conflicting. *Held*, also, that Sec. 2508, fixing the standard at 105 degrees, must yield to Sec. 2505, fixing 100 degrees flash test as the standard for illuminating oils, since this is the later enactment.

**EVIDENCE:** Documentary Evidence—Oil Inspector's Certificate—Admissibility. The defendant, a wholesale dealer, presumably had a right to act upon the certificate furnished to him by the oil inspector as to a test of the oil while in the tank car, which certificate contained the data called for by statute; and the same was admissible in record, as against the objection that it was not the best evidence, and that the complete public record kept by the inspector was the best evidence.

**EVIDENCE:** Declarations—Declarations of Husband as Wife's Agent—Oil Tests. Where a husband was acting for his wife, in having test made as to kerosene sold by the defendant to his wife and others, his declarations to a person making the test at his request, that the sample of kerosene was taken from the can out of which the exploding kerosene had been taken, were clearly within the scope of his agency, and were admissible over the objection that his statements were not binding upon the plaintiff.

*Appeal from Monroe District Court.*—C. W. VERMILION,
Judge.

JULY 2, 1919.

REHEARING DENIED JANUARY 15, 1920.

ACTION for damages for personal injuries sustained as
the result of an explosion of kerosene. There was a ver-
dict for the plaintiff, and the defendant appeals.—*Reversed
and remanded.*

*J. C. Mabry* and *D. W. Bates,* for appellant.

*Barton & Kay* and *N. E. Kendall,* for appellee.

EVANS, J.—I. The defendant was a wholesale dealer
in kerosene. He sold a quantity of kerosene to Dearinger,
a retailer. Dearinger sold to the plaintiff. The plaintiff
used the kerosene in a lamp, which exploded in her hands.
She was severely injured as a result. The charge of negli-
gence is predicated upon the allegation that the kerosene
delivered to the plaintiff was below the legal standard of
safety fixed by the statute, and that the sale thereof was
unlawful, and therefore negligent. Before sale by defend-
ant, the kerosene had been regularly tested by an inspect-
ing officer, while contained in a tank car, and in a carload
lot. It was certified to the defendant as approved, and as
testing 103. Samples obtained by plaintiff after the acci-
dent from the same delivery to Dearinger, tested 126 and
132. A sample taken from the plaintiff's can, however,
tested only 96 and 98. A vital question, therefore, in the
case is,—what is the lawful standard of test of kerosene oil
for illuminating purposes? An apparent discrepancy on
the question appears in our statutes, in that two sections
purport to deal with the question, and present different
standards. These are Sections 2505 and 2508, Code Supple-
ment, 1913, as follows:

"Section 2505. Each inspector shall be furnished, at reasonable expense to the state, with the necessary supplies, instruments and apparatus for testing, and shall promptly make inspection, and test and brand all illuminating oils kept for sale, and for such purpose may enter upon the premises of any person. He shall reject all oils for illuminating purposes which will emit a combustible vapor at a temperature of 100 degrees standard Fahrenheit thermometer, closed test, not less than one-half pint of oil to be used in the flash test. If upon test and examination the oil shall meet the requirements, he shall brand over his official signature and date the barrel or package holding the same, 'Approved, flash test —— degrees,' inserting in the blank the number. Should it fail to meet the requirements, it shall be branded under his official signature and date, 'Rejected for illuminating purposes.' All inspections shall be made within the state, and paid for by the person for whom the inspection is made, at the rate of ten cents per barrel, fifty-five gallons for this purpose constituting a barrel, which charge shall be a lien upon the oil inspected, and be collected by the inspector, reported and paid to the secretary of state, on or before the fifteenth day of each month. For the purposes of this act, gasoline, benzine and naphtha shall be deemed illuminating oil. No gasoline shall be sold, given away or delivered to any person in this state until the package, cask, barrel or vessel containing the same has been plainly marked 'gasoline' in such manner as the executive council may prescribe. There shall be no refund nor rebate of charges made or paid for inspection, except upon a duly verified certificate of the owner that the goods, for which such rebate is asked, have been disposed of outside of the state. Said certificate to be in such form as shall be prescribed by the secretary of state and shall be delivered to the inspector and attached to his monthly report. The amount of such rebate per barrel allowed during any fiscal

year shall be determined by the secretary of state during the month of July of each year and shall equal approximately the net proceeds per barrel from the inspection service of the state during the preceding fiscal year, the same to be even cents per barrel and in no case more than the net proceeds above mentioned. Any person, firm, corporation or agent violating any of .the provisions of this act shall be deemed guilty of a misdemeanor and punished accordingly. All necessary supplies, labels, instruments and apparatus as contemplated in this chapter, shall be purchased by the executive council, and shall be furnished to inspectors as needed by them, upon requisition therefor, made to the chief inspector, approved by him and forwarded to the executive council. Every person who receives products of petroleum for sale which have not been inspected as provided in this chapter, shall, .within five days after the receipt thereof, notify the inspector of that inspection district that the same is in his possession; and to neglect so to do shall be deemed a misdemeanor.

"Sec. 2508. If any person, company or corporation, or agent thereof, shall sell, or attempt to sell, any product of petroleum for illuminating purposes which has not been inspected and branded as in this chapter provided, or shall falsely brand any barrel or package containing such petroleum product, or shall refill with products of petroleum barrels or packages having the inspector's brand thereon, without erasing such brand and having the contents thereof inspected, and the barrel or package rebranded, or shall purchase, sell or dispose of any empty barrel or package without thoroughly removing the inspection brand, or shall knowingly or negligently sell or cause to be sold, or shall use or cause to be used, any product of petroleum mentioned in this chapter not inspected and tested, except as otherwise authorized herein; or if any person shall adulterate with any substance for the purpose of sale or use any prod-

uct of petroleum to be used for illuminating purposes in
such a manner as to render it dangerous, or shall sell or
offer for sale, or use any product of petroleum for illumina-
ting purposes, which will emit a combustible vapor at a
temperature of less than 105 degrees, standard Fahrenheit
thermometer, closed test, except as otherwise provided in
this section for illuminating railway cars, boats and public
conveyance, and except when the oils from which said gas
or vapor is generated in closed reservoirs outside the build-
ing to be lighted thereby, and except the lighter products
of petroleum when used in such lamps or apparatus which,
having been submitted to the state board of health and hav-
ing been examined and tested by said board shall be found
to be safe for the use of the public and for street light by
street lamps, shall be fined not less than ten dollars nor
more than fifty dollars, or if any common carrier shall carry
in any railway passenger, baggage, mail, or express car,
street railway car, boat, stage coach, omnibus, or other
means of public conveyance, or use or burn therein any oil
or fluid, whether composed wholly or in part of petroleum
or its products, which will ignite and burn at a temperature
of 300 degrees Fahrenheit thermometer, open test, for light-
ing any lamp, vessel, or fixture of any kind, or boat or street
railway car, stage coach or other means of public convey-
ance; or if any inspector shall falsely brand any package
or barrel, or shall practice any fraud or deceit in office, or be
guilty of any official misconduct or culpable negligence to
the injury of another, or shall deal or have any pecuniary
interest, directly or indirectly in any oils or fluids sold for
illuminating purposes while holding such office, he or such
person, company, corporation or agent shall be fined not
less than fifty dollars and shall be liable in a civil action
for all damages which may be sustained on account there-
of, and each such inspector shall be fined in a sum not less
than ten dollars nor more than one thousand dollars, or

imprisoned in the county jail not exceeding six months, or be punished by both fine and imprisonment."

It will be noted that, by Section 2505, 100 degrees flash test is fixed as the standard. That is to say, if the oil under inspection shall stand a temperature of 100 degrees, without flashing under the test, it is to be approved by the inspector, and so marked and branded upon the container. On the other hand, if it will not stand such temperature without flash under the test, it is to be rejected, and so marked and branded. These tests have reference solely to use for illuminating purposes. Under Section 2508, the standard is fixed at 105 degrees, and it is made therein a penal offense to sell oil for illuminating purposes which will not stand a test of 105 degrees without flashing. The defendant contends that the two statutes are inconsistent and contradictory, and that the later enactment must control; whereas the plaintiff contends that each statute can and must be given effect, and that it was competent for the legislature to forbid the sale of kerosene for illuminating purposes at a higher standard than that fixed for the guidance of the inspector. Some light is had on the subject from a consideration of the history of the legislation. The first enactment was Chapter 172 of the Acts of the Seventeenth General Assembly (1878). Sections 2 and 4 of that chapter were the approximate equivalent of the present Sections 2505 and 2508, except that the standard was fixed at 150 degrees in each section. This enactment was later amended by Chapter 185, Acts of the Twentieth General Assembly (1884). In that enactment, Sections 2 and 8 were the corresponding sections to 2505 and 2508. By that enactment, the standard was reduced from 150 degrees to 100 degrees, the change being made in each section. There was a further amendment by the twenty-first general assembly (1886), which we may notice later. These sections first

1. EXPLOSIVES: tests for illuminating oil: standard.

appeared as Sections 2505 and 2508 in the Code of 1897. As there contained, the standard had been raised to 105 degrees, and this standard appeared in both sections. In the thirtieth general assembly (1904), these laws were repealed and re-enacted, without change in the respect under consideration, by Chapter 87 thereof. Sections 3 and 6 of such Chapter 87 were incorporated in the 1907 Supplement as Sections 2505 and 2508. The thirty-fourth general assembly (1911) *amended Section 3 of Chapter 87, Acts of the Thirtieth General Assembly, by striking out the test figures "105" and inserting in lieu thereof the figures "100."* So amended, this section appeared as Section 2505 in the 1913 Supplement. The amending act made no reference to Section 2508, nor to Section 6 of Chapter 87, Acts of the Thirtieth General Assembly. The thirty-sixth general assembly (1915) by Chapter 219 repealed Section 2505 (and others), but re-enacted the same, without any change in the respect under consideration. This enactment made no reference to Section 2508.

Going back now to an amendment made by Chapter 149, Acts of the Twenty-first General Assembly (1886), a similar discrepancy was created. The standard adopted in both sections by Chapter 185, Acts of the Twentieth General Assembly, was 100 degrees. By Chapter 149, Acts of the Twenty-first General Assembly, this standard was raised to 105 degrees, by an amendment to that effect to Section 2 (2505) of Chapter 185; whereas no amendment or reference was made to Section 8 (2508) of said chapter. As a result of that amendment, the same discrepancy was created as appears in the present state of the law, but in reverse order. This discrepancy appears to have been discovered in the adoption of the Code of 1897, wherein the two sections were rendered harmonious, the same standard being specified in each.

From the foregoing history, it will be noted that Sec-

tion 2505 is the latest enactment of the legislature. If it must be said that Section 2508 is inconsistent or conflicting therewith in the respect indicated, it must yield to the later enactment. We see no escape from holding that the two sections are conflicting. A standard cannot be both lawful and unlawful. If 100 degrees is lawful by Section 2505, it cannot be unlawful under Section 2508. It is urged by the plaintiff that the purpose of Section 2505 was simply to give publicity to the test, and that Section 2508 was intended to fix the standard. We can conceive of no reason why it should be desired to give publicity to the approval of the inspecting officer, unless such approval was to act as a guide to the public and to the purchaser and the seller of oils. Otherwise, to publish the approval was to set a trap for those who should follow it as a guide. We see no way to construe these two sections consistently. The plaintiff does not attempt a consistent construction of them, except upon the suggested theory of publicity as to Section 2505. We reach the conclusion that the amendment of Section 2505 had the effect to reduce the standard to 100 degrees. If it was reduced at all, it was necessarily reduced as to both sections. By both sections, the standard is applicable solely to oils used for illuminating purposes. The inspector being required to approve and so brand oils meeting the 100-degree test, such brand of approval had no function to perform, except as a declaration that the oil met the legal standard. Our conclusion at this point disposes of all of the questions raised, pertaining to the instructions and to the law of the case, the trial court having held the standard to be 105 degrees.

II. Some questions pertaining to evidence are raised. It appears that the oil, when inspected, was in course of transportation in a tank car, and was not in any barrel or

package or other container. It was, there-

**2. EVIDENCE: documentary evidence: oil inspector's certificate: admissibility.** fore, impracticable and even impossible for the inspector to mark and brand and date the barrel or package. The practice obtaining in the inspector's office, under such circumstances, was to furnish the data thus called for by the statute in the form of a certificate, and to deliver the same to the owner and proposed seller. He also kept a complete public record, in addition thereto, of all inspections. The inspector did deliver to the defendant herein a certificate containing the statutory data. The defendant offered the certificate in evidence. This was refused, on the ground that the other record was the best evidence. We think the ruling cannot be sustained. The defendant presumptively had a right to act upon the certificate furnished to him by the inspector, and we can see no reason why it should not have been received in evidence for what it was worth. In this case, there was a discrepancy of one degree in the report of the test as made in the certificate delivered to the defendant, and in the record kept by the inspector.

It also appeared in evidence that the husband of the plaintiff acted for her in procuring evidence concerning the character of the kerosene sold by the defendant. He took

**3. EVIDENCE: declarations: declarations of husband as wife's agent: oil tests.** a sample of the oil in his own can, and obtained other samples from other persons who had purchased from Dearinger from the same tank, and submitted the same for tests to different qualified persons. These tests were put in evidence. The oil taken from the plaintiff's own can tested 96 and 98; whereas, the oil obtained from other persons, as having been received from the same tank, tested much higher than the legal requirement, 126 and 132. It appeared, also, that he took to Hatfield a sample which he said was taken from his own can, for the purpose of having a hydrometer test made thereof. Hatfield

made the test. He was not called as a witness by the plaintiff. The defendant called him. It appeared from the testimony of Hatfield that he made the test at the request of the husband, who informed him at the time that it came from his can, out of which the exploding kerosene had been taken. This evidence was ruled out, on the ground that the statements of the husband were not binding upon the plaintiff.

The necessary effect of this ruling was to nullify entirely the testimony of Hatfield. We think this ruling cannot be sustained. The testimony is abundant that the husband was acting, in all these tests, for his wife, and in preparation for this suit. The alleged statements and conduct inquired about were clearly within the scope of such agency, and ought to have been received.

For the reasons indicated, the judgment below must be reversed.—*Reversed and remanded.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.